## CARLSON SHEEP COMPANY v. SCHMIDT, ET AL.
### (No. 733.)

ANIMALS—SHEEP—TORTS—MIXING HERDS OF SHEEP—DAMAGES—EXEMPLARY DAMAGES—APPEAL AND ERROR—INSTRUCTIONS—PREJUDICIAL ERROR.

1. Where defendant's band of sheep was purposely driven so near a band belonging to plaintiffs with the intention of compelling the plaintiffs to move their sheep from the place on the public range where they were then being herded that the two bands became mixed, resulting in considerable damage to plaintiffs' sheep, including the loss of 38 head, a verdict allowing the plaintiff $750 actual damages and $250 exemplary damages was not excessive.

2. The extent of plaintiff's damages, if any, was a question for the jury upon consideration of all the evidence which was conflicting, and there being substantial testimony, if believed, to warrant the verdict, it will not be disturbed on the ground that it is not supported by sufficient evidence.

3. The evidence justified a finding that the defendant's acts were willful, and done with the intent and for the unlawful purpose of compelling the plaintiffs to cease grazing their sheep on that part of the public range where they were being herded and grazed, and upon the jury so finding it was proper to award exemplary damages.

4. In an action against a corporation for damages caused by the willful mixing of defendant's band of sheep with a band belonging to the plaintiffs, the court instructed the

jury that the rule making an employer responsible for a trespass by his employee while acting within the scope of his employment and in pursuance of the employer's business does not apply to or permit the recovery of exemplary damages for the willful and malicious acts of an employee of a corporation, except where the defendant corporation previously authorized or directed, or subsequently ratified or approved, such acts, or where it retained in its employ the one committing such act after knowledge of such willful and malicious conduct, or where, through its officers, it directly participated in, directed, authorized, approved or ratified such acts. *Held,* that evidence tending to show ratification by the vice-president and manager of the defendant was sufficient to go to the jury, rendering the instruction proper, but whether or not the instruction should have been refused on the ground that the evidence as to ratification was insufficient, it was not prejudicial, since it was stated in another instruction that even if the jury should find from a fair preponderance of the evidence that the employes of the defendant company willfully mixed defendant's sheep with those belonging to the plaintiffs, that would not authorize exemplary damages unless they should further find that the managing officer or foreman of the defendant company authorized or directed such employes to so willfully mix the sheep, or ratified such acts after they were done.

[Decided July 19, 1913.]                    (133 Pac. 1053.)

Error to the District Court, Weston County, Hon. Carroll H. Parmelee, Judge.

The action was brought by Charles Schmidt and others, doing business as Charles Schmidt & Sons, against the Carlson Sheep Company, a corporation. Upon a trial in the District Court judgment was rendered for plaintiffs and the defendant brought error. The material facts are stated in the opinion.

*Enterline & LaFleiche,* for plaintiff in error.

Conceding for the sake of argument that a willful trespass was committed by defendant's employes, the evidence of plaintiffs is wholly insufficient to show that they sustained $750 actual damages, or that 38 head of sheep were lost by

reason of the mixing of the two bands. There is no evidence whatever authorizing the assessment of exemplary damages. Plaintiffs wholly failed to prove that defendant had authorized or directed the acts complained of in this case. (Hagan v. R. R., 3 R. I. 88; Warner v. So. Pac. Ry. Co., 113 Cal. 105; Ry. Co. v. Prentice, 147 U. S. 110.)

*Metz & Sackett,* for defendants in error.

Practically every question raised in the brief of the plaintiff in error has been settled by this court in Henderson v. Coleman, 19 Wyo. 183. There was ample evidence to support the verdict, both as to actual and exemplary damages. It is proper in assessing damages in a case of this character to consider the value of the animal before and after the injury. (Krouschnable v. Knoblauch, 20 Minn. 56; Shea v. Hudson, 165 Mass. 43, 42 N. E. 114; C. & N. W. Ry. Co. v. Calumet Farm (Ill.), 61 N. E. 1095; Ry. Co. v. Biggs, 50 Ark. 169, 6 S. W. 724; Montgomery St. Ry. Co. v. Hastings, 138 Ala. 432, 35 So. 412; Loomis v. Besse, (Wis.) 135 N. W. 123.)

BEARD, JUSTICE.

This action was brought by the defendants in error against the plaintiff in error to recover damages alleged to have been sustained by the mixing of the bands of sheep of the respective parties. The cause was tried to a jury and a verdict returned in favor of plaintiffs (defendants in error), and against defendant (plaintiff in error) for $1,000 damages. Judgment was entered accordingly. A motion of defendant for a new trial was denied, and defendant brings the cause here on error.

The substance of the material allegations of the pleadings necessary to an understanding of the issues are, that during the month of January, 1911, the plaintiffs were the owners of 1,004 head of sheep, which they were ranging and caring for on the public range in Weston county; that said band of sheep consisted of breeding ewes kept by plaintiffs for the purpose of raising lambs and wool and for market.

That defendant was engaged in the sheep business, ranging his sheep in the same vicinity. That on January 27, 1911, the defendant with the intention of injuring and damaging plaintiff's sheep, and with the willful, unlawful and malicious intent to drive the plaintiffs out of the country where they were ranging their sheep, and to injure and destroy their business, wilfully, unlawfully and maliciously drove a band of 3,000 sheep of defendant into the band of plaintiffs, to their actual damage in the sum of $1,500, and claiming exemplary damages in the sum of $1,500.

The answer admitted the corporate capacity of the defendant and denied the other allegations of the petition.

The verdict was as follows: "We the jury duly impaneled and sworn in the above entitled cause, to try the same, do find generally upon the issues in favor of the plaintiff, and against the defendant, and assess the damages of the plaintiff at the sum of One Thousand Dollars ($750.00 damages and $250.00 exemplary) against the defendant."

The only grounds relied upon for a reversal of the judgment and presented by the brief of counsel for plaintiff in error are: 1. That the damages awarded are excessive. 2. That exemplary damages were improperly awarded. And 3. That the court erred in giving instruction numbered 12. We shall not attempt to set out the evidence at length, as to do so would serve no useful purpose. The undisputed facts are that plaintiff was ranging and herding a band of about 1,000 head of sheep on the public range in Weston county, and that defendant was at the same time also ranging a band of about 2,220 head of sheep about a mile distant from plaintiff's band. That one Edlum was the range foreman of the defendant in charge of the camp-movers, herders and four bands of sheep, including the band mentioned. That as soon as Edlum learned the plaintiff's sheep were at or near where the mix occurred he directed the camp-mover and herder to take the band to the vicinity of plaintiff's sheep, as he did not want them to get all the feed. That in pursuance of his directions they were taken close

to plaintiff's sheep, to which plaintiffs objected. That no effort was made by defendant's herder or camp-mover to prevent the mixing, and that the sheep became mixed. The camp-mover testified that what he did was by direction of the foreman; that he was perfectly willing that the sheep should mix up. He further testified, speaking of the mixup: "Q. Why didn't you prevent it? A. Carl Schmidt was in between them. Q. Did you go in between them? A. No, sir. Q. You took your rifle out to follow the sheep that morning? A. Yes, sir. Q. You expected trouble? A. Yes, sir. Q. You took your rifle along for that purpose? A. Yes, sir. Q. You intended to go through with it and back it up with a gun? A. Yes, sir." And further on in his testimony: "Q. You wanted the Schmidt sheep to be moved in that vicinity? A. Yes, sir. Q. That was what you desired? A. Yes, sir. Q. That was the desire of the foreman? A. I don't know. Q. Didn't you say he expressed dissatisfaction about their being there? A. Yes, sir. Q. You knew it was his desire that they should be gotten out? A. I supposed so. Q. You knew it was the desire of your company? A. Yes, sir. Q. You went there endeavoring to get the Schmidt sheep out of that section of the country? A. Not necessarily. Q. That was part of the purpose? A. To get the feed and they would have to get out. Q. You intended to get the feed anyway, didn't you? A. Yes, sir. Q. You didn't care whether the Schmidt sheep got any feed or not? A. No, sir." Without further stating the testimony at length, it strongly tends to show that defendant's sheep were purposely taken so near plaintiff's band, if they were not actually driven into it, that the result would be a mixup if plaintiffs did not move from that locality, and that it was the defendant's intention in so doing to compel plaintiffs to move their sheep from that place. After the mixup, plaintiffs went away and defendant took the sheep to a corral and separated them. After being separated, the plaintiffs not being there to take charge of them, and the defendant not having sufficient help

at hand to run the two bands separately, put them together and again separated them a few days later.

Plaintiff's sheep were in defendant's possession about seven days, and there was evidence tending to prove that thirty-eight head and a few lambs were lost and the sheep considerably damaged. There was also evidence on part of defendant that the sheep were but slightly damaged, if at all. The extent of the plaintiff's damages, if any, was a question for the jury on a consideration of all of the evidence, and as the evidence was conflicting and there being substantial testimony, if believed, to warrant the verdict, this court under the well established rule will not disturb the judgment on the ground that it is not supported by sufficient evidence. A careful reading of the evidence convinces us that the acts of the defendant were willful and done with the intent and for the unlawful purpose of compelling plaintiffs to cease grazing their sheep on that part of the public range. Such being the case, and if the jury so found, it was proper to award exemplary damages. The amount so awarded was not large, and evidently no more than the jury believed sufficient to admonish the defendant that in the future it should conduct its business with due regard for the rights of others.

By the twelfth instruction the court told the jury, in substance, that the employer is responsible for a trespass committed by the employee while acting within the scope of his employment and in pursuance of his employer's business. "But this instruction shall not apply to or permit the recovery of exemplary damages for the willful and malicious acts of such agents, servants or employees, except where the defendant corporation previously authorized or directed or subsequently ratified or approved such acts, or where it retained the agent, servant or employee committing such act, in its employ, after knowledge of such willful and malicious conduct, or where, through its officers, it directly participated in, directed, authorized approved or ratified such acts." It is argued that there was no evidence of ratifica-

tion of the acts of the camp-mover and herder by the officer or officers of the company, to which the instruction was applicable. We think, however, that there was sufficient evidence tending to show a ratification by Carlson, the vice-president and manager of the company, to go to the jury. But whether or not that instruction should have been refused on that ground, the giving of it was not in our opinion prejudicial to defendant; for by the ninth instruction given, to which no objection is here made, the jury was instructed, "that even if you should find from a fair preponderance of the evidence, that the employees of the company wilfully mixed the band of sheep, belonging to the defendant company, with those belonging to the plaintiffs, and that plaintiffs sustained damages thereby, this would not authorize you to assess exemplary damages, that is, damages in the way of punishment, unless you should further find from a further fair preponderance of the evidence, that the managing officer or foreman of the defendant company, authorized or directed such employees to so wilfully mix the sheep, or ratified such acts after they were done." There was ample testimony given by defendant's witnesses alone tending to show that the acts of the camp-mover and herder were done by the express direction of the foreman of the defendant company, and the question of awarding exemplary damages was rightly submitted to the jury. No prejudicial error being made to appear the judgment of the District Court is affirmed.                                   *Affirmed.*

SCOTT, C. J., and POTTER, J., concur.